In the Matter of the Petition of HENRY G. TREVOR,
Respondent and Appellant, for a Construction of the
Will of JOHN B. TREVOR, Deceased.
JOHN B. TREVOR et al., Appellants and Respondents.

**Will — rules for construction — trust for life of wife with
remainder to children, or, if any be dead, to their issue, or
if no issue to surviving brothers or sisters — when children
take no vested interest — provision that issue of deceased child
shall not receive share of principal until majority not in
contravention of statute against perpetuities — possible illegal
suspension of absolute ownership during four lives — when
subordinate illegal provision may be cut off and primary
purpose of testator preserved.**

1. In construing a will the court should be sedulous not to defeat
the testator's expressed intention. It should so read his language as
to effectuate his purpose if the canons of construction and interpre-
tation permit. But it should not assume the task of rewriting or
mutilating the will. The rules as to the suspension of the power
of alienation are explicit, although their application is at times
difficult. Whatever the intention of the testator may be, he must
use apt legal words to make his intention effective as against the
statute. If a way may be found to preserve what is essential and
legal, that which is illegal and of minor consequence must not be
permitted to defeat the clear purpose of the testator.

2. Testator by his will directed that one-third of his residuary
estate " be set apart for the benefit of my wife and after her death
for the children of our marriage," the said sum, at the death of the
widow, to be disposed of by adding the same in equal parts to the
shares of the residuary estate passing to such children under another
provision of the will, which directed that said residuary estate be
divided into four equal shares to represent his four children (one by
a former wife and three by the one referred to in the will) and to
invest the same and apply the income to the support of each child
during minority and pay the principal to each in installments upon
their respectively attaining the ages as therein set forth. He further
provided that in the event of the death of any child before receiv-
ing his or her share in full said share was to vest in the issue of
said child, if any, but if such issue be an infant, the executors were

1924.] Statement of case. [239 N. Y. 6]

to apply the income to the benefit of such infant during minority and pay to it the principal upon its attaining majority. In the event of the death of any child without issue his or her share was directed to be added in equal shares to those of the surviving child or children.

3. The will contains no words of present gift to the three children of his second wife depending on a contingency and cannot be fairly read as vesting upon the death of the testator one-third of his residuary estate in said children, subject to the life estate of their mother and subject to being divested in case of death in favor of issue or in favor of surviving brothers or sisters. On the other hand, no suggestion appears of an intention to create one indivisible and joint trust. The expressed purpose of the testator is, first, to separate the residuary estate into four distinct shares, one for each of his children, and then to anticipate possible contingencies by making provisions applicable separately to each share, which might prove unessential to his dominant purpose.

4. The provision of the will that if a child, named as remainderman, dies before receiving his share of the principal, leaving issue, the issue are to take except that if they are minors they are not to have the principal until majority, is not in contravention of the statute forbidding the suspension of the power of alienation for more than two lives in being. The language of the will is that the child's share shall on the death of the child " belong to and vest in the issue of such child," so that it may well be said that the interests of the minors vest absolutely at the end of the second life. The suspension of the full power to alienate during minority results from the disability of infancy. The statute is aimed only at suspension by the terms of the will.

5. Nor does a direction that, if there are no issue, the share of a child so dying before receiving possession is to be added to the shares of the surviving children, so that absolute ownership of such a share might be suspended during the life of the widow, during the life of a child and during the lives of two other children, necessarily invalidate the will. If in making such provision testator has potentially gone beyond the statutory limitation, the line of cleavage may be drawn so as to preserve his primary purpose that if the children of his widow live to become entitled to possession of their shares under his will, ownership shall vest in them; if they die leaving issue before becoming entitled thereto, the ownership shall vest in their issue. The invalidity of the testamentary provision in favor of surviving brothers and sisters does not affect the legality of the trusts in favor of the existing children and their issue and, the right to possession having now under the terms of the will accrued, the estates of the

surviving children and the children of a deceased child have now vested and they are entitled to immediate possession of their shares. (*Matter of Horner*, 237 N. Y. 489, 495, followed; *Matter of Wilcox*, 194 N. Y. 288, distinguished.)

*Matter of Trevor*, 207 App. Div. 673; 209 App. Div. 1, modified.

(Argued June 5, 1924; decided September 30, 1924.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 21, 1924, which reversed in part a decree of the Westchester County Surrogate's Court, construing the will of John B. Trevor, deceased.

*George W. Wickersham* and *Francis Smyth* for John B. Trevor et al., appellants and respondents. Properly construed, the provisions of testator's will respecting the one-third of his estate set apart for the benefit of his widow and her three children, do not suspend the absolute ownership of personal property for more than two lives in being at the death of the testator. (*Central Trust Co.* v. *Falck*, 177 App. Div. 501; *Matter of Horner*, 237 N. Y. 489; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381.) The provisions for issue of a deceased child do not constitute a suspension of the absolute ownership of the share given to such issue. (*Dickerson* v. *Sheehy*, 156 App. Div. 101; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Lewisohn* v. *Henry*, 179 N. Y. 352; *Van Brunt* v. *Van Brunt*, 111 N. Y. 178; *Manice* v. *Manice*, 43 N. Y. 303; *Brooklyn Trust Co.* v. *Phillips*, 134 App. Div. 697; 201 N. Y. 561.) The limitation over in the event of the death of a child without lawful issue does not involve any further suspension of absolute ownership. (*Hardenbergh* v. *McCarthy*, 130 App. Div. 538; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Everitt* v. *Everitt*, 29 N. Y. 39; *Fulton Trust Co.* v. *Phillips*, 134 App. Div. 699; 218 N. Y. 573.) Even if invalid, the provisions with respect to the possible death

of children, with or without issue, before reaching the period of actual distribution of the corpus are contingent and secondary in importance and may be disregarded without affecting the validity of the prior estates. (*Matter of Colegrove*, 221 N. Y. 455; *Matter of Horner*, 237 N. Y. 495; *Carrier* v. *Carrier*, 226 N. Y. 114; *Matter of Hitchcock*, 222 N. Y. 57; *Matter of Silsby*, 229 N. Y. 396; *Church* v. *Wilson*, 152 App. Div. 844; 209 N. Y. 553.)

*J. Edwards Wyckoff*, *John F. Devlin* and *James Morrow* for John A. Stewart et al., executors and trustees, appellants and respondents. The remainders of the three children of Emily N. Trevor, the widow of the testator, in the trust for her benefit vested in them immediately upon the testator's death, and there was no illegal suspension of the power of alienation. (*Moore* v. *Little*, 41 N. Y. 66; *Campbell* v. *Stokes*, 142 N. Y. 23; *Matter of Lowerre*, 104 Misc. Rep. 570; *Gates* v. *Fisher*, 107 Misc. Rep. 53.) The will is likewise clearly sustainable upon the theory that as to each share absolute ownership was suspended only during the life of the widow and child, and thereupon vested either in the issue of such child or in the surviving child or children of the testator. (*Vanderpoel* v. *Loew*, 112 N. Y. 167, 185; *Corse* v. *Chapman*, 153 N. Y. 466; *Schey* v. *Schey*, 194 N. Y. 368; *Orr* v. *Orr*, 147 App. Div. 753; *Zartman* v. *Ditmars*, 37 App. Div. 173, 178; *Smith* v. *Edwards*, 88 N. Y. 92, 106; *Everitt* v. *Everitt*, 29 N. Y. 39; *Miller* v. *Gilbert*, 144 N. Y. 68; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Cammann* v. *Bailey*, 210 N. Y. 19; *Matter of Embree*, 9 App. Div. 602; 154 N. Y. 778.)

*Abel E. Blackmar*, *C. C. Daniels*, *Henry A. Forster* and *Henry J. O'Neill* for Henry G. Trevor, respondent and appellant. The power of alienation is suspended for more than two lives, as well as during possible lives not in being at decedent's death — and the provisions of

the trust applying after the death of the widow are void. (*Evans* v. *Curtis*, 103 Misc. Rep. 161; *Matter of Silsby*, 229 N. Y. 396; *Matter of Wilcox*, 194 N. Y. 288; *Bailey* v. *Buffalo L. T. & S. D. Co.*, 213 N. Y. 525; *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Kilpatrick* v. *Johnson*, 15 N. Y. 322; *Matter of King*, 200 N. Y. 189; *Smith* v. *Edwards*, 88 N. Y. 92.) Where a will provides for a future division among persons who shall then answer a given description to be paid only upon their attaining certain ages, and not otherwise, the gift is future and contingent, and there is no absolute ownership until the division takes place. (*Hobson* v. *Hale*, 95 N. Y. 588; *Dickerson* v. *Sheehy*, 156 App. Div. 101; 209 N. Y. 592; *Brooklyn Trust Co.* v. *Phillips*, 134 App. Div. 697; 201 N. Y. 561; *Lewisohn* v. *Henry*, 179 N. Y. 352; *Matter of Wiley*, 188 N. Y. 579; 111 App. Div. 590; *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Benedict* v. *Salmon*, 177 App. Div. 385; 223 N. Y. 707.) Where the power of alienation of personal property is sought to be suspended during more than two indivisible lives, or during joint lives, or through a series of contingent cross-remainders and contingent minorities affecting more than two lives, the result is a void indivisible or joint trust which cannot be severed and as to which decedent died wholly intestate. (*Matter of Silsby*, 229 N. Y. 397; *Benedict* v. *Salmon*, 177 App. Div. 386; 223 N. Y. 707; *Simpson* v. *Trust Co. of America*, 129 App. Div. 201; 197 N. Y. 586; *Walter* v. *Walter*, 60 Misc. Rep. 384; 133 App. Div. 893; 197 N. Y. 606; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Brown* v. *Quintard*, 177 N. Y. 75; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Hooker* v. *Hooker*, 166 N. Y. 156; *Matter of Butterfield* 133 N. Y. 473; *Haynes* v. *Sherman*, 117 N. Y. 433.)

POUND, J.   Testator died over thirty-three years ago. His widow died July 22, 1922.   He had a son by his first wife, Henry G. Trevor.   By his second wife, Emily G. Trevor, he had three children, Mary, Emily and John, who were at the time of his death under the age of twenty-one years.   For this wife and her children he made special provision in his will.   The daughter Mary married, died December 1, 1900, and left two children. The daughter Emily and the son John are living and are upwards of forty years of age.   The children of Mary are of full age.   No obstacle would remain in the way of the vesting and distribution of their shares under the terms of the will if it were not for the fact that Henry G. Trevor has, by invoking the rule that the validity of a will is to be determined as of the time of the death of the testator and not in the light of what has actually occurred (*Matter of Wilcox*, 194 N. Y. 288), obtained an adjudication that, as thus read, the will is invalid in respect to the trust created for their benefit because, under possible contingencies, the power of alienation is suspended for more than two lives in being at the death of the testator, and that he is accordingly entitled to share equally with them in the fund provided for their benefit.

These provisions refer to the one-third part of his residuary estate amounting to upwards of $3,000,000, which testator directed to be " set apart for the benefit of my wife and after her death for the children of our marriage in view of the fact that my eldest son Henry G. Trevor is in possession and enjoyment of a separate estate derived from his mother and maternal grandfather.". If the testator has not validly executed his declared purpose to exclude Henry from participation therein, the court should so declare.   It should be sedulous not to defeat the testator's expressed intention.   It should so read his language as to effectuate his purpose if the canons of construction and interpretation permit.   But

it should not assume the task of re-writing or mutilating the will. The rules as to the suspension of the power of alienation are explicit, although their application is at times difficult. The court will not trifle with them, but will give them a reasonable application. Whatever the intention of the testator may be, he must use apt legal words to make his intention effective as against the statute. The heir's interest may not be taken from him by a mere expression of testamentary desire.

At the death of the widow, the will provides, " the said principal sum (*i. e.*, of the trust for the benefit of the wife and her children) shall be disposed of by my executors for the benefit of her children, Mary T. Trevor, Emily H. Trevor and John B. Trevor, Junior, by adding the same in equal parts to the several shares representing her said children respectively in my residuary estate as hereinafter provided."

The will directs the executors or trustees to divide the residuary estate into four equal shares to represent his four children and " to hold and invest each share " and apply the income to the support of each child during minority, etc. We are not concerned with the provisions as to income on the shares in the one-third part here involved, as the widow had the entire income during her life.

The will provides for the disposition of the principal of the residuary estate as follows: Upon each child attaining the age of twenty-three years, twenty-six years and thirty-two years respectively the executors are " to pay over " to such child one-fifth part of the principal and two-fifths thereof at the age of forty years, subject to the discretionary power, which is not asserted, of the executors or trustees to withhold payment of one-fifth during the life of a child.

By distinct and separate provisions, testator further directs:

" *In the event of the death of any child of mine before*

1924.]        Opinion, per POUND, J.        [239 N. Y. 6]

*me,* or after me, before receiving his or her share of my estate in full *leaving lawful issue,* such issue shall stand in the place of the deceased parent *and the share of my estate representing the child who shall have so died shall belong to and vest in the issue of such child* so dying and be divided equally among them *per stirpes,* share and share alike, but in respect to any issue of a child so dying who shall be an infant under the age of twenty-one years, I direct my executors to set apart the equal part of the parent's share to which such infant child will be entitled at the death of the parent and hold the same during the minority of such infant child and to apply the income only of such share to the benefit of such infant child during minority as far as may be necessary, and on such child attaining the age of twenty-one years to pay over the principal of the share of such child to such child with any accumulations of interest thereon. * * * *It being my intention that the absolute ownership of each share of my estate representing any child or grandchild of mine shall not be suspended except as hereinbefore specified during the single life of the child whom it represents and during the minority of any grandchild. In the event of the death of any child of mine before me* or after me *without leaving lawful issue surviving him or her,* and before he or she shall be entitled to receive his or her share of my estate in full as hereinbefore provided, I direct my executors or trustees *to add the share representing such child, or so much thereof* as may remain unpaid, *in equal sums to the shares of my estate representing my other surviving child or children.*"

The trusts were duly created. No question is raised on this appeal except as to the right of Henry G. Trevor to share in the trust fund created for the benefit of his stepmother and her children after her death. The residuary estate has, with this exception, been administered in accordance with the terms of the will on the theory that the shares of the children therein were vested, but

the question here raised was not decided in the prior accountings, did not necessarily arise until the termination of the life of the second wife and is an open one.

The will cannot be fairly read, as is contended by appellants, as vesting upon the death of the testator one-third of testator's personal estate in the three children of the second wife, subject to the life estate of the mother and subject to being divested in case of death in favor of issue or in favor of surviving brothers or sisters. The will contains no words of present gift to the children depending on a contingency and may not be construed as applying merely to futurity of possession. As was said in *Lewisohn* v. *Henry* (179 N. Y. 352, 361):

" He was determined that they should not squander his estate and he took great care to prevent that result, which he could not prevent in the case of their issue, appointees or next of kin owing to the limitations placed by law upon the right to create trusts. If a share vested in each child upon the death of the testator, it was subject to alienation at the will of the owner, for a vested right is alienable and may be assigned. Whatever one owns he may sell, even if the date of full possession and enjoyment is not due.   *   *   *

" The trustees took the legal title with the usual power of management and with the duty of applying the net income to the use of the respective beneficiaries. They were to ' have and to hold ' each share until the child for whose benefit it had been set apart should reach a certain age, and, ' upon arrival ' at that age, they were to convey and pay over to him or her a part of the capital ' in fee simple and absolutely.' The use of the word ' upon ' followed by a direction to convey indicates that until the contingency named should happen there was to be no vesting.   *   *   *   No part of the capital was to go to the children until the time fixed for absolute transfer to them should arrive. The direct gift to the executors and the absence of any

gift of capital to the children in the first instance, show that there was no intent to vest title in them prior to the date named for distribution. The gift of capital to the children was through the direction to convey, and there was no vesting until the time to convey came around."

On the other hand, notwithstanding the elaborate scheme of contingencies thus provided for, no suggestion appears of an intention to create one indivisible and joint trust. The expressed purpose of the testator is first, to separate the residuary estate into four distinct shares, one for each of his children, and then to anticipate possible contingencies by making provisions applicable separately to each share, which might prove unessential to his dominant purpose.

The possibilities of distribution provided for by the will which are said to contravene the provisions of the statute against suspending the power of alienation are as follows: *First.* If a child dies before receiving the principal, and leaves issue, the issue are to take, *except* that if they are minors they are not to have the principal until majority. When the testator says that it is his intention that absolute ownership of a child's share shall not be suspended except during the single life of the child whom it represents and during the minority of any grandchild, he does not necessarily imply that the power of alienation has been thus suspended by him beyond the life of the child. He says, first, that the child's share shall on the death of the child " belong to and vest in the issue of such child." He postpones the right of possession, if the issue are infants, by providing that such shares shall remain in the custody of the executors, and it may well be said for the sake of consistency and in order, if possible, to vest an estate, that the interest of the minors vests absolutely at the end of the second life. In other words, he directs when their vested interests shall be given to them; when they shall come into free

and unrestricted possession of·their shares. Nothing is interposed between the beneficiaries and their enjoyment of their estate except the provisions of the will as to the time of such free and unrestricted possession of their shares. (*Van Brunt* v. *Van Brunt*, 111 N. Y. 178, 187.) The suspension of the full power to alienate during minority results from the disability of infancy. The statute is aimed only at suspension by the terms of the will. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201, 214.)

*Secondly.* If there are no issue, the share of a child so dying before receiving possession is to be added to the shares of the surviving children. This possibility involves a contingent continuance of the trust. The share of a child might be augmented by the death of the others and continued under the trust. (*Matter of Silsby*, 229 N. Y. 396; *Church* v. *Wilson*, 152 App. Div. 844; affd., 209 N. Y. 553.) Absolute ownership of such a share might thus be suspended (a) during the life of the widow, (b) during the life of a child, and (c) during two lives more. (*Ward* v. *Ward*, 105 N. Y. 68.)

But, if a way may be found to preserve what is essential and legal, that which is illegal and of minor consequence must not be permitted to defeat the clear purpose of the testator. " The provision that in given circumstances a share shall fall back into the general body of the trust and remain unsevered from the bulk is so subordinate in importance and so separable in function that we are at liberty to cut it off and preserve what goes before." (*Matter of Horner*, 237 N. Y. 489, 495.) If what goes before the contingent limitation of a possible part of a child's share by more than two lives in being is cut off and preserved, the result will be validly to tie up each share first, for the life of the widow and then for no more than the life of a child, whom the share represents. The testator's desire is thus far validly expressed. If the estates then vest the statute is not offended. If in providing for the distribution of the share of a child

who should die without issue before receiving his share, testator has potentially gone beyond the statutory limitation, the line of cleavage may be drawn accordingly. His primary purpose is that if the children of his widow live to become entitled to possession of their shares under his will, ownership shall vest in them; if they die leaving issue before becoming entitled thereto, the ownership shall vest in their issue. His secondary, separable and alternative purpose is that if any of them die without issue before receiving possession of their shares, such shares shall go to the surviving children. The trust for the benefit of the children and their issue may be treated as an entirety; the contingent trust for the benefit of the surviving children in the case of the death of a child without issue as another entirety.

One of the alternative provisions is valid. If a child does not die, his estate vests when he reaches the age of forty; if he dies leaving issue, the estate vests in his issue. The mere fact that the limitation over on another contingency which has not occurred is invalid does not invalidate that which is good. The invalidity of the testamentary provision in favor of surviving brothers and sisters does not affect the legality of the trusts in favor of the existing children and their issue. (*Schettler* v. *Smith*, 41 N. Y. 328; *Matter of Colegrove*, 221 N. Y. 455; *Church* v. *Wilson*, *supra*; *Matter of Mount*, 185 N. Y. 162.) In *Matter of Wilcox* (*supra*) the dominant purpose of the testator was to provide for his daughter Frances, and her issue. In carrying out this purpose he ran into the statute. It was held that the gift over, although valid in itself, was invalid for the reason that the subsequent passing out of an intermediate life could not be considered as removing the invalid suspension. The case is clearly distinguishable. The future estates the validity of which is now in question are the contingent estates which do not vest until after the termination of

2

[239 N. Y. 6]　　　Opinion, per Pound, J.　　　[Sept.,

the second life. With their validity the court is not now concerned. The court deals not with academic or abstract questions as to what may happen. No child has died without issue. The will is to be read in the light of what has happened, not so much for the purpose of determining its validity as for the purpose of seeing clearly by such light what is possible in the way of separating the good from the bad. In thus construing the will the court does not perform a radical operation to remove a malignant growth where either the disease or the operation will take the life out of the testamentary document. The irritation of invalidity has produced, not a cancer, but, at worst, an epidermal callosity which may be harmlessly eliminated. A pencil may be drawn through the objectionable alternative provisions of the will which postpone vesting beyond the end of a second life. A perfectly good and workable will remains. The result is that, the right to possession having now under the terms of the will accrued, the estates of the surviving children and the children of the deceased child have now vested and they are entitled to immediate possession of their shares in accord with testator's intention and direction.

The order of the Appellate Division, so far as it reversed the decree of the surrogate, should be reversed and decree of surrogate affirmed, so far as it decides the rights of the children and grandchildren now entitled to receive the fund, with separate bills of costs to each party or set of parties appearing by separate attorneys, and to special guardians, all payable out of the estate.

Cardozo, McLaughlin and Lehman, JJ., concur; Hiscock, Ch. J., Crane and Andrews, JJ., dissent.

Ordered accordingly.